I want to first focus on the city's appeal on the rightness issue. In the reply brief, the plaintiffs spend a lot of time complaining that they're not required to exhaust their remedies following state procedures. But whether or not exhaustion is required, it's clear that the rightness doctrine under Williamson County required that the Coastal Commission process run its full course before this case could go forward. But what is the status of the Coastal Commission? The Coastal Commission, the court granted judicial notice of the Coastal Commission action in January and May of 2006. The Coastal Commission decided it had jurisdiction and went ahead and considered the permit, the Coastal Permit, and denied the permit altogether. There is pending litigation challenging the Coastal Commission decision to not go. So what is the status of that? Attorney General is here in the room, but the city is not a party to that litigation. My understanding is there are three cases pending. One was actually originally set for oral argument in the Court of Appeal today. It's been postponed to February. There's a second one being briefed, and there's a third case pending in the trial court. The Supreme Court in Williamson explains that there is an overlap between the rightness and exhaustion doctrines, but there are significant differences. Exhaustion focuses on potential remedies. Could the plaintiff get an injunction? Could the plaintiff get damages? Whereas rightness has a much broader focus, whether or not there's been a final decision as to the scope and nature of the government regulation of the property. So the Court has a firm basis for measuring the constitutionality of the regulation at hand and doesn't have to speculate as to what the government might or might not have done if the course, if the project went its full course through the process. If you have a State exhaustion, a county exhaustion, a city exhaustion, and a town exhaustion, your position is all of those people have to have a crack at it before anyone can bring a lawsuit. Well, Your Honor, I think that's a – well, it's a function of how the State has set up the process. Well, the city – the city has completed its work. It's completely – The city has nothing left to do. The city has nothing left to do. Well, that's not true, actually, because at this point if this project is going to go forward, the city is going to consider it again. I understand. Once the case is over, it has nothing to do with the Coastal Commission Act. That's to be separate. Actually, that's not true. I mean, the way that the – Can you appeal? The way that the Coastal Act is set up, the process integrates both the local and the Coastal Commission process. What happens under the State law is that the local government creates a local coastal program and coastal plan that is reviewed and approved by the Coastal Commission, and then once that is in place, the way the process works, one goes first to the city and gets a coastal permit, and then that coastal permit is reviewed and considered by the Coastal Commission. I don't quite understand. The same way that one would go to a planning commission and then the city council. I don't quite understand. Suppose the Coastal Commission went the other way. It granted. Why would that make any difference in this case? They're really concerned about what the city is doing. Are you suggesting that any type of restriction the city puts on its approval must be appealed to the Coastal Commission? Well, under the Rightness Doctrine, to the extent that the Coastal Commission, and we believe the Coastal Commission can, deal with the issue and form and shape it in the same way that the city can, under the Rightness Doctrine, one has to go to all the bodies that can consider it. Well, I can see that what the Coastal Commission does might have a lot to do with damages because if the Coastal Commission says no, then the argument would be that you've done nothing to damage the plaintiffs because they can't get by the Coastal Commission. And I can understand its relevance, but I don't see the relevance to rightness as you frame it. But be that as it may, once the Coastal Commission decides, isn't the rightness, even under your argument, isn't it then ripe for us to decide? Absolutely. Absolutely. So now the Coastal Commission has decided, so we go ahead and decide. But this case, but the Rightness Doctrine applies to the trial court, to the trial court decision. This trial court went ahead and decided the case based on a record that did not include the full panoply of review, and so it wasn't ripe at the time the trial court. Your appeal is from the district court's award of damages. Correct. On the plaintiff's claim that there was a denial of equal protection. That's correct. In connection with these proceedings. Now, and the, your rightness argument is that there are still proceedings pending in the Coastal Commission so that if they are denied, they have to wait until the Coastal Commission process is complete. And what is the exact bearing of that on your claim that the district court shouldn't have damages in this? Because the purpose of the Rightness Doctrine is to allow the court to see what the finished product is of the regulatory process. And so if a plaintiff is complaining about the density or the use or in this particular case a particular condition. I take it, okay, I take it these come from the taking cases? It comes from taking cases. The principle law is on the case. That's correct, but this court has applied the same rule to equal protection cases as well as to substantive due process cases. We cite a number of cases in our brief where the court has applied the Williamson Rightness Test to all those types of claims. Okay. Now, what is the leading case that applies it where the proceedings are not the entity from which the damages are being sought? I don't know of any case that discusses that issue specifically. There is one Ninth Circuit case called St. Clair v. the City of Chico, and it's, I believe, 880 F2D 199. That's a case involving a sewer permit in the unincorporated area of Butte County adjacent to Chico. And that is a case where, although the court didn't discuss the issue of one or the other, as its ruling on the Williamson Rightness, it required the plaintiff property owner to go both to the County of Butte, which had a certain level of jurisdiction, and the City of Chico that also had a certain level of jurisdiction over this, over the sewer permit, sewer connection permit. So that is the one Ninth Circuit case. That's a little different. Okay. But let's just assume then that that, just help me, if we assume that they don't have to wait for everything to be done and that the case is right, just assume that, then why on the merits is this wrong? Okay. On the equal protection issue, I want to start out by reminding the Court that the trial court explicitly found that the City did not harbor any ill will or malice toward North Pacifica. And, in fact, the City wanted the project to go forward. That lack of malice or ill will, in our view, ought to, under the class of one cases, under the OLEC line of cases, bar North Pacifica's equal protection claim here. Now, I recognize that that's not the case. There's a split of authority on that particular point among the various circuits and among various cases. But I think this case demonstrates quite well why malice or ill will or some sort of moral culpability ought to be a prerequisite to the success of an OLEC claim. The decision here concerned the precise words of one of 40 conditions in the City approval of the project. It's the kind of decision that a City planner, City planning commission, City attorney make every day of the week. Maybe they're tailoring the language to the specifics of the particular project. They may be trying to improve what they did compared to the last project, or they may be simply writing a condition anew without going back and checking the precise language that had been used in all prior projects. Without malice or ill will, some kind of malice or ill will. Or is it just intentional? Without necessarily ill will, but intentional? Well, intentional, I think, in the context of this kind of claim, we argue this in the brief, means an intention to treat someone differentially in a way that is intended to disadvantage them compared to everybody else. That could be without ill will. Excuse me? That could be without ill will. Well, Your Honor, I would argue that it requires some sort of moral culpability, some, the lack of a better term, some intent on the part of the government agency to screw in some way or shape, form, or property. Or just an intent to treat someone differently. I think under OLEC it requires something more than that. And the reason for that is that without that kind of requirement, you realize that these are the kinds of decisions that city planners, city planning commissions, city attorneys make every day, thousands of times a day. And if you don't have that kind of prerequisite to the claim, it's going to subject the federal court review as a violation of equal protection virtually all these kinds of local land use decisions. And we don't think that was the result that was intended in the OLEC case. Well, isn't it true for equal protection, which you have to demonstrate is that you treated others similarly situated differently, you did it intentionally, and there was no rational basis for it? Well, that there's the standards under this Court's rulings on equal protection is that there's no conceivable basis for the distinction. But, yes, I think the Court has stated the basic rule. I'm just wondering if there is any others that were in the same situation, that you treated differently. Well, Your Honor, the evidence at trial consisted of a number of different sets of piece of paper, which were the permit conditions for a number of other projects, and they were treated differently in the sense that the precise words in the condition in this particular case were different than the precise words in a number of other conditions. Well, if I understand it, this was actually, if I correct, this was actually done by a lawyer who was hired prior. That's correct, Your Honor. And the lawyer didn't really have any idea what had been done in a lot of other cases. He was trying to find some language to reach a certain result here. And the problem was that the lawyer sensed that this was going to end up in the courts forever and ever, and he was going to get around that for that particular reason. Well, I think, Your Honor, the fact that there was lots of litigation was, number one, the reason it was referred to a lawyer, and the city had already been sued several times. It seems to me that the distinction between this case and other cases where we found equal protection is that a person not in the city, outside lawyer, was inserting the language for something entirely different. He was inserting the language because of a threat. He perceived to be a threat of litigation. Isn't that what the record shows? That's absolutely right, but not from the standpoint of protecting the city in existing litigation, but rather from the standpoint of trying to protect the city against future litigation. But all lawyers who are hired to do something, to draft something, are trying to avoid litigation. That's correct. Well, I don't know that they all are, Your Honor, but I'll assume that. One hopes so. But that's, again, from the standpoint of is there a conceivable basis for what the city did here? I think that really points to it. Here they are. They're engaged in litigation already with these people, and because of that, number one, it gets referred to the attorney. Number two, the attorney looks at the condition and says that it's really not very clear. And, in fact, all the witnesses at trial, both the plaintiff's expert as well as the city's expert, testified that the previous versions of this condition were not very clear. And, in fact, the evidence at trial showed that the city had used various formulations in the past. So the attorney looks at it and says, well, I don't think it's very clear. We've been fighting with these people over everything. I want to try and make it clear. Yeah. And you do have, in the Olick City of Willowbrook case, you do have this concern clearly that in a zoning situation, to just say, well, other people have been treated differently doesn't get you very far because almost all zoning decisions are based on unique factors. That's right. I mean, I think there are some cases to discuss in a land use and zoning context. In fact, really everything is pretty unique because the old saw in real estate that every property is unique, going back to that. But the point that I was making earlier is that if you're intentionally discriminating against someone knowingly, like this, putting in this 13B, which is in no other condominium projects, you're intentionally doing it, but not necessarily for ill will, but it's to help out other litigation, particularly over the road. Well, it's to prevent litigation. That's right. And the case law, even if one assumes, of course, that it's done intentionally, is that there is a conceivable basis for treating this person differently from that violation of equal protection. And that's important here because there was a conceivable basis. The city had a conceivable basis. What was that? Excuse me? What was that? Trying to avoid dispute over this particular condition. There wasn't any evidence that the other comparables, the other properties were ones where there were ten lawsuits against the city brought by the property owners. This was a unique property in terms of the relationship and the litigation aspect of the project that was different from other projects and allowed the city and pushed the city to try and make sure it didn't have any more litigation, unsuccessfully, unfortunately. Counsel, I've read, I guess, the First Amendment complaint.  Or the supplemental complaint, Your Honor. No. If I understand it, the complaint that was before the district court didn't make an equal protection claim. That's correct, Your Honor. So it's solely a due process claim. That's correct, Your Honor. The district court said on the basis of the due process claim, there's no claim here. Well, that's correct. And so now we're, and then it, there was a supplemental complaint that raised the equal protection. Is that correct? That's correct, Your Honor. And when did the city, when did the plaintiff first raise the equal protection? In the response to a summary judgment motion before trial. And the trial court allowed them to file the supplemental complaint. And at what point did this, did the plaintiff object administratively to this provision? They objected by letter when it was originally proposed before the planning commission. The planning commission approved it with this condition. It was one of, I don't know, maybe 18 or 20 conditions that were objected to. The plaintiff did not appeal the planning commission decision, although a citizen did, to the city council. When it went to the city council. Are you talking about the November 6th letter? No. It was in August of 2003. Prior to that? It was in August of 2002. There was a one-page letter that attached the earlier letter to the planning commission. But before the council, did this, was this ever raised before the council? It was never raised orally. It was in the letter given to the city council. It was never raised orally. It was not raised orally. It was given to the city attorney. It was given in a letter. Let me just go briefly to damages and return to the coastal commission for a moment, because the coastal commission, dependency of those proceedings, in addition to making this case that isn't one that isn't right, is also made of one where the plaintiff couldn't possibly have suffered any damages, because as long as the plaintiff could not develop it, could not sell it for the approved project. Because the plaintiff didn't have that coastal permit as necessary, and the city wasn't responsible for that, they really, they didn't suffer any damages. Any damages they suffered were theoretical, not real. The trial court relied on a couple of cases, Wheeler and Nemers, in awarding damages, but those cases are different from this, because in those cases, but for the city's action, the owner could have begun construction of the project or sold it fully entitled for development. So in those cases, the owner never, the owner suffered some real loss for the period that the city's development bar was in place. But regardless, in this case, regardless of what the city did or didn't do or went or didn't do it, went or did or didn't do it, the plaintiff could not go forward without the coastal permit that's sitting here today, as I've explained, that the project still doesn't have. So there really weren't any damages here. Thank you. We'll give you, you've just about used your time, but we'll give you a minute on rebuttal. May it please the Court. Jacqueline Pope for Pelley Cross Appellant North Pacifica. This is my co-counsel on appeal, Julia Follinsby. I'd like to address some of the issues the Court was interested in with the city. Regarding the rightness issue, I wanted to make it clear that in the Ninth Circuit that Williamson, the Ninth Circuit has been clear, Williamson applies to as-applied challenges. This is not an as-applied challenge. Ninth Circuit has said in Carpentaria and other cases that Williamson applies to an as-applied takings claim and to due process or equal protection claims that arise out of as-applied. This is a condition that was only applied to North Pacifica and is on its face, treats North Pacifica different than anyone else. You can tell that on its face, and therefore, as we discussed in our reply brief, it is not an as-applied challenge. Regarding the discussion as to ill will or malice and the necessity of ill will or malice, and regarding the different treatment, the city stipulated in the stipulated facts that are attached to the liability decision that it had never used this kind of language or imposed the joint and severally requirement for CC&Rs for any other condo development or any common use development whatsoever, that it was unique. The magistrate found it was unprecedented, that it was unique, that it was unjustified, and that there was nothing about the project that justified this language. How did you get before a magistrate judge? Everybody stipulated. Pardon? We stipulated. Both sides stipulated. Oh, okay, you bought on yourself. I was just curious. Now, the magistrate judge has a rather interesting theory, I thought. I don't see that the magistrate judge found the type of directness of these things you usually find, but he said he didn't need to because there was deliberate indifference. That was his way of getting around a very necessary part of the theory. I'm having difficulty with the deliberate indifference. In Squaw Valley, we said intentional. Intentional doesn't mean deliberate indifference. Intentional means intentional. And it seems to me that I'd like to hear your best argument on that. Please have in mind that we have some Supreme Court cases that we have to follow. We have Squaw Valley we have to follow. I think the Second Circuit in Jackson came down with about the best analysis of this. So tell me why it is that deliberate indifference can be a substitute for intentional. Under the law of the circuit, under the law of the Supreme Court, and the Second Circuit, Second in Jackson. Your Honor, I'm not prepared to answer that question because the magistrate found direct – he found direct intention. If you – if I could draw the Court's attention to paragraph 73 of the decision on the liability phase, what the magistrate did is he found that it's a long sentence, but it's a long sentence. But I'm sorry, it's paragraph 72. Right before paragraph 73, the last sentence of paragraph 72, the magistrate found, having imposed a unique and burdensome condition of approval upon NP's project, and then failing to take any steps to remedy the problem when it was specifically brought to the City Council's attention for redress, the City intentionally treated NP differently from other similarly situated developers for purposes of the Equal Protection Clause. He then went on to find that, in addition, the City Council ratified the behavior and was deliberately indifferent. But his primary theory is that once the City Council knew about the disparate treatment and refused to do anything about it, it became intentional on the part of the City Council, and it was direct discriminatory and intentional treatment. Does he use the term deliberate indifference? Yes, he does in paragraph 73. Yes. But that's following up. That's an alternate theory. Alternate theory. Does he say this is an alternate theory? Yes, he does. Where is that? 73? Yes. And, in fact, if you look at the footnote, number 10. Which line are you reading from? All right. There's three parts to this. You're in paragraph 73. I'm on paragraph 72, line 10. 72? Paragraph 72, line 10. All right. This is where he finds that the City, because the City Council knew about the problem and didn't do anything. Failing to take any steps to remedy. Excuse me? His term is failing to take any steps to remedy the problem. All right. Now, okay, if we could read footnote 10. It's in footnote 10 that Judge the Magistrate makes it very clear that he is finding direct action. Footnote 10 is at the bottom of the page. He's not focusing on intentionally doing something. Yes, he is. He's talking about not doing something. Well, he says that in paragraph 10, but he is still not. Paragraph which? Footnote 10 at the bottom of page 38, underneath. Okay. Paragraph 72. He says he cites back to his summary judgment judgment, summary judgment order. And he's citing himself. And he's saying, In this case, the equal protection claim is properly directed in the first instance to the City Council as the final policymaker directly. Rather than merely denying an appeal of an allegedly unlawful act by the subordinate staff or failing to act in the face of a claim of a law violation and thus purportedly ratifying subordinate conduct, here the council was the ultimate body that imposed the allegedly unconstitutional condition directly upon N.P. It did so in the face of an explicit claim by N.P. that it was being treated differently from all other applicants. So he quotes his old order. And now in this decision, he says, Having been presented with at trial additional evidence regarding the. You're reading where now? I'm still reading from footnote 10, which is on the bottom. Footnote 10 goes from page 38 to 39. Okay. Having been presented with at trial additional evidence regarding the relevant course of events, the court concludes that the City is liable not only because of the City Council's direct action or rather inaction, but also because of the City Council's failure to act with response to the actions with respect. Excuse me. Also because of the City Council's failure to act with respect to the actions of its subordinates. So he's saying also because of that, the actions of the subordinates are in addition to the City Council's own intentional failure to take any steps to correct the denial of equal protection. And you think those are alternative holdings? Yes, because I think that's what also means. Is that what he said, they're alternative holdings? Yes. Where is that? He uses the word also. What page? He uses the word also at the bottom of page 39 in footnote 10. 39 in footnote 10. Yes. And that footnote, that footnote, which he didn't think was important enough to put in text, you feel he was saying there that these are alternative holdings. I feel that it's also in the body of the decision in that in paragraph 72, he sets forth the reasons why he thinks the city is directly liable for a violation of equal protection. That's in paragraph 72. And then in the next paragraph, in paragraph 73, he sets forth the reasons why the city is also liable because of its ratification and or deliberate indifference to the staff's violation. That's in paragraph 73. Which line are you reading from where he says also? Also. He then explains it in footnote 10, and it's in the footnote. Well, you're back to footnote 10. He doesn't say anything in the text. Well, he's explaining why there's both paragraph 72 and 73 in the decision. But you do concede that he lays great stress on his theory of deliberate indifference? I think it's equal stress. I don't think it's equal. Because of footnote 10, he says also? No, because of paragraph 72. Do you concede that if he relied upon deliberate indifference, we'd reverse him? If that's what you're telling me, yes. No, no, I'm not. I want your position. If we conclude that it only is deliberate indifference that he stated, how would you argue that that is still okay, we should affirm the magistrate? He also says they ratified it in paragraph 73. 73 says both ratified and deliberate indifference. So is this? Wait a minute. Just stop just for a second. I'm asking you a question specific outside of the findings. I'm having enough problems with those. Just tell us, if he had just said there's deliberate indifference, how would you argue that's sufficient for an equal protection clause? What case would you rely on to say deliberate indifference is sufficient to show intentional conduct? Well, as I said, Your Honor, I have not concentrated on deliberate indifference due to the fact that the magistrate also found direct conduct and ratification. You don't want to answer the question? But I would argue it based on the facts. And the facts are that North Pacifica tried time and time again to let the city council know and to let the city attorney know and to let the city planner know that Condition 13b was unprecedented, would render their project essentially dead because it was contrary to California state law, that it could never get approval from the Department of Real Estate, that no real estate broker could ever sell it. You're missing my question. My question is, if there was he rested only on deliberate indifference, how would you square that with our case? For example, how would you square it with Squaw Valley? Your Honor, I haven't read Squaw Valley for the purpose of deliberate indifference. I would have to review the case. No, it doesn't have it. It talks about intentional. That's my problem. Or the Second Circuit case in Jackson. Well, since the magistrate found intentional, I'm just, I am not prepared to argue that the Court has to accept deliberate indifference because he found intentional. That's fair enough. I'm sorry. I don't mean to argue with you, and I would love to have the opportunity to go review the deliberate indifference cases, but it did not occur to me that that was the crux of the magistrate's decision. Let me ask you this. If your original complaint did not allege an equal protection complaint. That's correct, because it hadn't happened yet. Well, wait. Excuse me. It did allege equal protection, but just not Condition 13b. Not Condition 13. Right. And the one that you did allege is not before us, is that what you're saying? Right. Okay. Now, the, there was a motion, there was an argument, a motion for summary judgment. It was at that point that the district court raised the question of whether or not Condition 13 established raised an equal, may have been an equal protection violation? Yes. North Pacific had been attempting to resolve the dispute over Condition 13b with the city and since August of 2002. And the summary judgment motions were released in April of 2003. And at that time, because there was no response whatsoever from the city regarding it, we put it in as an example of a denial of equal protection, and we said that we were also seeking damages based on the fact that they were also denying equal protection. The other allegations in the First Amendment complaint had all happened, the First Amendment complaint had been filed like nine months prior to Condition 13b, so it wasn't in there. The magistrate at the hearing on the summary judgment motion asked the city a lot of questions about Condition 13b, and then he issued a two-page, a very brief order that summarized what his summary judgment ruling was and stated that he overruled the city's summary judgment ruling as to Condition 13b. And at that point, I had this record. What happened at that point? And then as part of that order, there was a subsequent much longer summary judgment opinion a couple weeks later. The magistrate ordered North Pacifica to prepare a supplemental complaint based on Condition 13b and one other issue that was not, that didn't go forward to trial but that he wanted to have in the supplemental complaint so he could rule on it. Well, at some point did the city say we'll take out 13b? The city wrote on June 17th a letter, basically summary judgment motion was around June 10th, about a week later after the magistrate made it obvious that he was concerned about 13b. North Pacifica received a letter from Michael Crabtree, who was the city planner. Under condition, under the conditions of approval, all of the CC&Rs, including Condition 13b, had to be signed off on by both the city attorney and the city planner. And there was a letter from Michael Crabtree saying essentially that he would interpret Condition 13b not, you know, to have the language in it that North Pacifica had been asking to have substituted. Not that it would be rewritten, but simply that he would put it in it. Well, in the course of the summary judgment motion, one of the issues was whether Michael Crabtree was a final policymaker. And the city had put in at least two declarations from other city officials saying Michael Crabtree was not a final policymaker, and Michael Crabtree himself had said he was not a final policymaker. So the letter was not from a final policymaker. It was not signed by the city attorney, who was the other person who was supposed to sign off on the conditions of approval. It wasn't from the city council. It really had no effect. And during the trial, the attorneys who drafted that letter admitted that it had been for the purpose of influencing the court. They didn't say that was the sole purpose, but they said, of course, they had hoped it would influence the court. And the magistrate found that because the letter could never have been enforced and because it obviously had to do with a litigation strategy, that it did not at all satisfy removing Condition 13b. What do we do about the Coastal Commission's decision and the fact it may be no damages? Well, Your Honor, it is undisputed. It has not been assigned as error. And there has not been any, the city has not shown that the magistrate's finding that the Coastal Commission dispute could have been settled for $300,000 or less has not been attacked. That's a finding based on evidence, based on a document in the supplemental excerpt of records. The city's own expert, Walter Carney, talked to the deputy attorney general for the commission, and everyone confirmed that the case could be settled for $300,000 or less. The way the magistrate had defined the issue in his April 2004 order, which he had denied the city's motion to dismiss and he had set up guidelines for damages in his April 2004 order, he had said, the commission has something to do with damages, not liability. We will see what its impact is on the value of the bowl project. And the impact was $300,000 or less because the case could be settled for $300,000 or less. Yeah, but regardless of whether it could have been settled, if the Coastal Commission says that the project can't go forward, the project cannot go forward, what damage is worth it? Well, at the time that the damages trial happened, the Coastal Commission had not said that the project could not go forward, and the evidence before the trial court was that it could have been settled for $300,000. In our opposition to the request for judicial notice, we cited law that all these things that happened so far after the damages trial should not be considered. The reason that the case didn't settle for the $300,000 is because during the period of time when that offer was on the table, Condition 13b was still in effect, and it didn't make any sense to do that, to go ahead and pay. But what did the damages represent? There's two damages to this case, and I think that the city always glosses over one of them, and I think the most important one is that North Pacifica had to litigate and incur a cost of cure in the form of the attorney's fees, where no one else did. And that's actually part of the violation of equal protection and part of the damages. The other part of the damages, as they are measured ---- But what litigation? I thought ---- This lawsuit. I thought you said that this lawsuit didn't need the equal protection claim didn't get into the lawsuit until after the summary judgment motion. This was the trial was bifurcated. Okay. And so ---- So it's really an attorney's fees, it's not damages? No, I'm saying that's part of the damages and that there's a tendency to overlook the fact that the city forced North Pacifica to litigate just to get rid of these three words. The other damages are the loss of the value of the property during the period of time that 13b was imposed. The trial court magistrate called that the delta. It was the difference in market value between the Boal project with and without Condition 13b. That's true, but the project can't go forward. And couldn't go forward. Well, that ---- All right. That's fine. Then we're looking at the concurrent, the independent concurrent causation theory. The trial judge in awarding damages found that the commission was responsible for delay and not the city, but the truth is they were both responsible for the same delay at the same time. And to say that, well, it's okay for the city to violate North Pacifica's constitutional rights because there's an administrative process that is also delaying things. So now you're appealing the ---- Okay. So now you're talking about the due process claim? The substantive due process claim? No, what I was talking about was that the court found that only the commission and not the city was responsible for delay. And our point is that both people, both entities were responsible at the same time, but the city was responsible because of wrongful actions, because they violated due process. Whereas ---- Okay. So then you ---- So now we are on, we are off the equal protection claim and we're talking about the due process claim, which the city, which the district court dismissed. No. No. As part of awarding damages for equal protection, in his damages decision, the magistrate did not award any damages for delay because he found that only the commission and not the city were responsible for delay. And my understanding of the court's question prior to that seemed to me to tie in with that, that the court, Your Honors, were saying, well, how can, you know, how can you have any damages when, you know, it's all, the commission was delaying everything anyway and the project never could have gone forward. That's not clear even now that the project's not going to go forward. That's not clear because it's a subject of an administrative writ. It certainly was not clear at the time of the damages trial to say, well, everything is the commission's fault and nothing's the city's fault, completely overlooks the fact that there was a serious equal protection violation. The city would simply not respond to North Pacifica until the magistrate even showed some interest in 13B. The magistrate found that North Pacifica was forced to litigate to get its equal protection rights. And those are serious claims. And those are entitled to damages. And when I say that everyone overlooks the fact that North Pacifica had to incur attorneys' fees and they say, oh, those are just attorneys' fees, those are damages. People aren't supposed to have to go to court to get something this simple taken care of. It is a denial of equal protection. Kagan. You have more than used your time. Excuse me? You have more than used your time. You're in the game. Oh, I'm sorry. Well, I appreciate it. I didn't see the button. Thank you very much. Thank you. Now Your Honor. Yes, you can hit me. Just to point out that part of the reason that the magistrate had to reach out for the deliberate indifference aspect of this is the magistrate found that the city was clear that the city wanted this project to go forward. And it's that June letter that Ms. Pope just points out from the city planner makes clear the city would have done what was necessary in order to facilitate the development of this property in connection with 13B. Thank you. Yeah, but it was still insisting on 13B, wasn't it? It was insisting on a condition that would harmonize 13B with all the other requirements that North Pacifica was complaining about that it conflicted with. And then how about the damage issue that we discussed just at the end of the last argument? What's the effect of that? I agree with Ms. Pope on one thing, that the attorneys' fees was an element of damages. We don't think they should be entitled to that much attorneys' fees, but nevertheless it's an element. What was the total damage award? The damage award was $121,000. But the damage, and that did not include the attorneys' fees. The attorneys' fees are dealt with separately. So you concede that even though the project could not go forward because the Coastal Commission's ruling, that they are still entitled to the damages and attorneys' fees? Your Honor, we argued in the trial court, we've argued in the briefs and appeal that there were other, there are other, there are other, other ways of curing the problem that would have cost a lot less than the $400,000 in attorneys' fees that were awarded. I think it would involve some amount of attorneys' fees in the process. I know that. Here we've got a project. The argument is that the city delayed the project in violation of equal protection, but the project couldn't go through in any event. That's correct. The city did not delay the project. So the only, as far as we're concerned, in terms of attorneys' fees, the only element of damages would be the attorneys' fees that, you know, would have taken to go deal with, for example, appealing the city's condition, which I think there was evidence of something like $10,000 or $15,000. So while we see that as an element of damages, if you assume there's liability here, it's certainly not $400,000. And the other element of damages, $120,000, is just completely theoretical. There weren't any real damages because the Coastal Commission prevented it. But you're not, in that you're not conceding the liability. No, we're not. Obviously, we're not conceding the liability. Thank you, Your Honor. Thank you. The matter just argued is submitted for decision. That concludes the Court's calendar for today. The Court stands adjourned. All rise.
judges: Wallace, Hug, Schroeder